UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| ABRAHAM DEVRIES, an individual; CURTIS DEVRIES, an individual; and MARVIN DEVRIES, an individual,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>DELAVAL, INC., a Delaware corporation; BLUE DIAMOND DELAVAL LLC, dba Dairy Services, a Delaware limited liability company;<br><br>　　　　　Defendants. | Case No. CIV 04-136-S-EJL<br><br>ORDER ON REPORT AND RECOMMENDATION |

Plaintiffs Abraham DeVries, Curtis DeVries, and Marvin DeVries (collectively "DeVries") initiated this action against Defendants DeLaval, Inc. and Blue Diamond DeLaval, LLC (collectively "DeLaval") alleging state law claims for breach of contract, fraud and strict liability. Subsequently, DeLaval moved for summary judgment, while DeVries moved to add a claim for punitive damages. On June 1, 2006, United States Magistrate Judge Mikel H. Williams issued a Report and Recommendation, recommending that DeLaval's Motion for Summary Judgment be granted in part and

ORDER ON REPORT AND RECOMMENDATION- 1

denied in part, and that DeVries' Motion to Amend/Correct to Add Claim for Punitive Damages be granted.

Both parties have filed objections to Magistrate Judge Williams' recommendation. Any party may challenge a magistrate judge's proposed recommendation regarding a dispositive motion by filing written objections within ten days after being served with a copy of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). The district court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The district court may accept, reject, or modify in whole or in part, the findings and recommendations made by the magistrate. Id.; see also Fed. R. Civ. P. 72(b).

**Background**

The background of this case is covered in detail by the Report and Recommendation and the Court will only briefly summarize the facts here.

The DeVries own two dairy operations and a milking facility near Kuna, Idaho. In May of 1998, DeVries purchased a rotary milking system from DeLaval. The DeVries experienced several problems with the milking system that DeLaval could not solve.

In February of 2001, the parties entered into settlement agreements where among other things DeLaval agreed to replace a portion of the original milking system with EcoDetachers, service and warranty the new equipment for up to three years, supply the DeVries with sanitizers and teat dip for up to three years, and reimburse and credit the

DeVries for certain costs associated with the original system. Additionally, DeLaval agreed that if in the future it was unable to satisfactorily repair or replace any of the new equipment it would refund the purchase price, excluding the cost of installation labor (the "Limited Warranty"). In return, the DeVries executed Releases that promised to "give up any and all claims and rights, known and unknown . . . against Dealer or DeLaval . . . caused by or related in any way, directly or indirectly, to the installation, use, operation or maintenance of any of the Original Equipment."

DeLaval completed installation of the EcoDetachers in July of 2001. The DeVries continued to experience problems with the milking system. The DeVries also experienced problems with the teat dip supplied by DeLaval. In March of 2002, DeVries informed DeLaval that they had decided to purchase farm chemicals and teat dip from another company. The DeVries also contacted an outside source, Valley Equipment Co, Inc., to evaluate the milking system. In March of 2003, based on Valley Equipment's analysis, the DeVries hired Valley Equipment to replace several parts of the milking system. Among other items, Valley Equipment replaced a 3" stainless steel pipeline with a 4" pipeline. The original milking system purchase agreement had required DeLaval to install a 4" pipeline but apparently a 3" pipeline had been installed instead.

Subsequently, DeLaval sent a letter to the DeVries offering to pay the DeVries $51,554.00, the amount that DeLaval estimated as the refund price for the defective

equipment under the Limited Warranty. The DeVries refused the offer and this lawsuit followed.

In the Complaint, the DeVries allege breach of contract, fraud and strict liability. The DeVries also move to amend the Complaint to add a claim for punitive damages. DeLaval, in turn, moves for summary judgment asserting that the breach of contract claim is barred by the Releases on the original milking system and by the Limited Warranty on the new equipment; that there is no evidence of fraud; and that the strict liability claim is an impermissible attempt to recoup a purely economic loss.

## Standards

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Adams v. Synthes Spine Co., 298 F.3d 1114, 1116-17 (9th Cir. 2002).

When analyzing the merits of the state law claims the Court is mindful that it must apply the substantive law of Idaho, as interpreted by the Idaho Supreme Court. See Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 920 (9th Cir.1988). "[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989), cert. denied, 493 U.S. 1058 (1990). In this regard, the federal court must follow an intermediate state court decision unless other

persuasive authority convinces the federal court that the state supreme court would decide otherwise.  Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).

## Discussion

### 1. The Original Equipment and the Releases

The Releases appear to bar the DeVries' breach of contract claim to recover damages for the alleged failure of the original milking system. The DeVries, however, assert that the Releases were fraudulently procured and therefore they are unenforceable. Specifically, the DeVries argue here, as they did to the magistrate judge, that DeLaval's stated commitment to fixing the dairy, its failure to study or test the new equipment, the email of April 11, 2001, the email of June 13, 2001, the mislabeled teat dip, and the installation of the 3" pipeline, all are evidence of fraudulent inducement.

The magistrate judge considered these arguments and, after reviewing the record, the case law and applicable standards, concluded that the only evidence sufficient to raise a genuine issue of material fact on the elements of fraud concerned the installation of the 3" pipeline. (Report and Recommendation at 11-20).  Having reviewed the record de novo, and having considered all inferences reasonably supported by the same, the Court agrees with the magistrate judge: that with the exception of the 3" pipeline there is a lack of evidence to raise a genuine issue of material fact of knowing or reckless fraudulent representations.

DeLaval, on the other hand, objects to the exception to summary judgment for installation of the 3" pipeline. Contrary to DeLaval's assertion, there is sufficient evidence to allow this claim to go forward. Tom Storm, acting as a DeLaval signatory to the Releases, has admitted he knew at the time that a 3" pipeline had been installed as part of the original milking system. (Aff. of John F. Kurtz in Supp. of Mot. to Add Claim for Punitive Damages, Ex. G, p. 101-05). And the original purchase agreement, showing that a 4" pipeline should have been installed instead, was attached to, and part of, the Releases. (Id.). It could be reasonably inferred, therefore, that Mr. Storm knew of the deficiency when he signed the Releases but did not disclose it.

Therefore, the magistrate judge was correct in concluding that the Releases barred all breach of contract claims in regards to the original equipment except for a claim against DeLaval for installation of a 3" pipeline instead of the agreed upon 4" pipeline.

**2. New Equipment and the Limited Warranty**

DeLaval objects to the magistrate judge's recommendation that summary judgment be denied on DeVries' claim for consequential and incidental damages relating to the new equipment. DeLaval contends that the Limited Warranty should bar this claim. The magistrate judge determined that there were genuine issues of material fact as to whether the Limited Warranty failed of its essential purpose. The magistrate judge also recommended that the remedies available pursuant to Idaho Code § 28-2-719(2) apply to the DeVries' claim.

ORDER ON REPORT AND RECOMMENDATION- 6

Reviewing the record de novo, the Court finds disputed facts bearing on the issue of whether the timing and amount of DeLaval's tendered refund resulted in a failure of the Limited Warranty's essential purpose. Similarly, after reviewing the applicable case law, the Court agrees with the magistrate judge in applying Clark v. International Harvester Co., 581 P.2d 784, 801-03 (Idaho 1978) to allow the remedies available under § 28-2-719(2).

### 3. Strict Liability

The DeVries object to the magistrate judge's recommendation that summary judgment be granted on the strict liability claim. However, as the magistrate judge's analysis demonstrates, (Report and Recommendation at 26-28), the Idaho case law indicates that the damages the DeVries seek are of the kind that are not recoverable under a strict liability cause of action. See  Myers  Clark v. International Harvester Co., 581 P.2d 784, 791-92 (Idaho  1978) (explaining that economic loss not recoverable in tort action); Myers v. A.O. Smith Harvestore Products, Inc., 757 P.2d 695, 699 (Idaho App. 1988) (explaining that physical damage to dairy cattle due to faulty feed storage and delivery system is really claim of economic loss sounding in contract).

### 4. Punitive Damages

Pursuant to Idaho Code § 6-1604, the DeVries moved to amend the Complaint to add a claim for punitive damages.  Such a motion may be granted if "the moving party establishes at [a] hearing a reasonable likelihood of proving facts at trial sufficient to

support an award of punitive damages." I.C. § 6-1604(2). The "justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence'; 'malice, oppression, wantonness'; or simply 'deliberate or willful.'" Manning v. Twin Falls Clinic & Hospital, 830 P.2d 1185, 1190 (Idaho 1983) (upholding award of punitive damages in a medical malpractice case).

The magistrate judge recommended that the motion be granted. DeLaval objects to the recommendation on two grounds: 1) that the magistrate judge erred in failing to apply a "clear and convincing evidence" standard; and (2) that there is no evidence to support granting the motion when viewed under the appropriate standard.

With regard to the applicable standard, the Court must follow the direction provided by the Idaho Supreme Court on this issue. In a recent opinion, the Supreme Court declared that in a case, such as this, where the causes of action accrued prior to the effective date of the 2003 amendment, the "claimant must prove, **by a preponderance of the evidence**, oppressive, fraudulent wanton, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Myers v. Workmen's Auto. Ins. Co., 95 P.3d 977, 983 & n.1 (Idaho 2004) (emphasis added) (refusing to apply the 2003 amended version of I.C. § 6-1604).

The Court must also disagree with DeLaval on the quality of the DeVries' evidence. At least as to the delivery of mislabeled and /or expired teat dip, the evidence is

adequate at this stage of the proceeding to establish a reasonable likelihood that the DeVries could prove facts at trial sufficient to support an award of punitive damages. Id. at 984.

However, the Court reminds the parties that

> this [C]ourt sees the threshold for amending a complaint to add a claim for punitive damages to be significantly lower than the threshold for allowing a punitive damages claim to ultimately reach a jury. At trial, until the court finds that the record is sufficient to allow the jury to consider the issue of punitive damages, the court will exclude evidence about the [D]efendants' wealth and financial condition. Moreover, should the evidence presented at trial fail to establish a sufficient factual basis to support an award of punitive damages, the court will not allow the claim for punitive damages to go to the jury.

Doe v. Cutter Biological, 844 F. Supp. 602, 610 (D. Idaho 1994); see also Myers, 95 P.3d at 984.

## ORDER

Having conducted a de novo review of the objected to portions of the Report and Recommendation, this Court finds that Judge Williams' Report and Recommendation is well founded in law and consistent with this Court's own view of the evidence in the record. Acting on the recommendation of Magistrate Judge Williams, and this Court being fully advised in the premises, **IT IS HEREBY ORDERED** that the Report and Recommendation entered on June 1, 2006 (docket no. 52), should be, and is hereby, **INCORPORATED** by reference and **ADOPTED** in its entirety.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (docket no. 23) is **GRANTED in part and DENIED in part** as follows: Summary Judgment is granted on the claim for Strict Liability; Summary Judgment is granted on the claim for Fraud except to the extent it bears on the installation of the 3" pipeline; and Summary Judgment is granted on the Breach of Contract claim with regard to the Original Equipment except for the installation of the 3" pipeline and is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Amend/Correct Claim for Punitive Damages (docket no. 32) is **GRANTED.**



DATED: **August 9, 2006**

Honorable Edward J. Lodge
U. S. District Judge

ORDER ON REPORT AND RECOMMENDATION- 10